IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEE STEWART, ) | |
| ) | Civil Action No. 3:17-cv-0066 |
| Plaintiff, ) | |
| ) | United States Magistrate Judge |
| v. ) | Cynthia Reed Eddy |
| ) | |
| KENNETH CAMERON, Superintendent, ) | |
| C/O BRUMBAUGH, ) | |
| C/O MOONEY, ) | |
| CPT. MILLER, ) | |
| HEARING EXAMINER C.J. McKEOWN, ) | |
| and C/O JOHN DOE, ) | |
| ) | |
| Defendants. | |

**MEMORANDUM OPINION[1]**

Before the Court is the Defendants' motion to dismiss Plaintiff's Amended Complaint, with brief in support (ECF No. 14 and 15) and Plaintiff's response in opposition (ECF No. 18).

After careful consideration of the parties' submissions, in light of the standards governing motions to dismiss set forth by the United States Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009), and as articulated in United States Court of Appeals Third Circuit precedent, *see, e.g., Connelly v. Lane Const. Corp.,* 809 F.3d 780, 790 (3d Cir. 2016), and for the following reasons, the motion will be granted in part and denied in part.

Background

Plaintiff Lee Stewart ("Plaintiff" or "Stewart") is a state prisoner in the custody of the Pennsylvania Department of Corrections ("DOC") currently confined at SCI - Dallas. Plaintiff

---

[1] All served parties have consented to jurisdiction by the undersigned Magistrate Judge. *See* 28 U.S.C. § 636, et. seq.; Consent to Trial / Jurisdiction by United States Magistrate Judge (ECF Nos. 4 and 20). Defendant C/O John Doe remains unidentified and unserved.

1

brings this civil rights action under 42 U.S.C. § 1983 alleging that his constitutional rights under the First Amendment were violated when he was placed in Administrative Custody ("AC") and then transferred from SCI-Houtzdale to SCI-Dallas in retaliation for exercising his constitutionally protected right to file a lawsuit and that his constitutional rights under the Fourteenth Amendment were violated when he was denied an impartial misconduct hearing. Defendants move to dismiss the Amended Complaint based upon Plaintiff's failure to state a claim.

For purposes of resolving the pending motion, the following facts are as alleged in the amended complaint, viewed in the light most favorable to Plaintiff, and liberally construed. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008); *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972).

Pro se pleadings, however "inartfully pleaded" must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972). Because Plaintiff is a *pro se* litigant, this Court may consider facts and make inferences where it is appropriate.

In November of 2013, Plaintiff filed in this Court a civil rights action under § 1983 against several prison officials and medical personnel from SCI-Houtzdale, in addition to Corizon Health Care, then a contractual medical service provider to the Pennsylvania Department of Corrections, alleging that defendants denied him adequate medical care in connection with a left ankle injury he suffered while playing basketball. *See* Civil Action No. 3:13-cv-0246. In the instant lawsuit, Plaintiff alleges that during the course of his previous litigation, Defendants Brumbaugh and Mooney frequently harassed him, by *inter alia,* threatening to sabotage his lawsuit and throwing him in the "hole." Through his Amended

Complaint, Plaintiff alleges that on one occasion, Defendant Brumbaugh told him that he "hate[d] inmates that sue hard working staff." Amended Complaint, at ¶ 1.

In 2015, "tired of the threats harassment of Brumbaugh and Mooney," Plaintiff sent requests slips to Defendant Miller, who at the relevant time was the Shift Commander, informally complaining about the harassing behavior of Brumbaugh and Mooney. Plaintiff alleges that soon after his complaint(s), he was placed in RHU on administrative custody on May 8, 2015, per order of Defendant Miller, due to him being "a danger to some persons in the facility." *Id*. at ¶ 3. While in RHU, Plaintiff was served with a misconduct report, #B770230, which charged him with "possession of a dangerous or controlled substance," and "unauthorized use of the mail or telephone." *Id.* at ¶ 4. The Misconduct Report was authored by Defendants Brumbaugh, Mooney, and C/O John Doe. Two days after receiving the misconduct report, Plaintiff was "permanently" transferred to SCI-Dallas on May 14, 2015.[2]

On May 21, 2015, Plaintiff appeared before Defendant McKeown for his misconduct hearing. According to the Amended Complaint, "before plaintiff could plead or submit a written version, McKeown . . . [had] personally spoken with Capt. Miller of SCI-Houtzdale about the charges of misconduct, and suggested for plaintiff to cop-out to charges for lenience." *Id*. at ¶ 7. Although Plaintiff told Defendant McKeown that the misconduct was in retaliation for his

---

[2] At the time of his transfer, Plaintiff's prior lawsuit was pending and defendants had only recently filed motions for summary judgment. See Docket, 3:13-cv-0246, ECF Nos. 87, 91, and 95. On May 28, 2015, the Court received a motion from Plaintiff asking for an enlargement of time in which to respond to the motions for summary. ECF No. 100, dated May 19, 2015. In the motion, Plaintiff stated that he had been in the RHU since May 8, 2015, and was informed on May 14, 2015, that he was being transferred to SCI-Dallas. On June 8, 2015, Plaintiff filed a Notice of Change of Address, indicating that he had in fact been transferred to SCI-Dallas. ECF No. 103, dated June 1, 2015.

3

ongoing lawsuit against SCI-Houtzdale staff, McKeown found Plaintiff guilty of the charges and sanctioned him to 180 days of disciplinary custody in RHU.

In May of 2015, Plaintiff filed Grievance #570638 in which he charged that his transfer to SCI-Dallas was in retaliation for his lawsuit against the prison officials and medical personnel at SCI-Houtzdale. His grievance was rejected as "being in conflict with DOC policies 801 and 802." *Id*. at ¶ 9.

On April 20, 2017, this case was initiated in this Court. (ECF No. 1). On July 17, 2017, Defendants filed a motion to dismiss. (ECF No. 10). In response, Plaintiff filed an Amended Complaint (ECF No. 13), which supersedes the original complaint and is the operative pleading in this case. Presently pending is the Defendants' motion to dismiss the amended complaint on the following grounds: (1) Plaintiff has failed to show the personal involvement of Superintendent Cameron, Hearing Examiner McKeown, and Captain E. Miller; (2) Plaintiff has failed to state a claim against Defendants Brumbaugh, Mooney, and/or Miller relating to the filing of a false misconduct report; (3) Plaintiff has failed to state a Fourteenth Amendment claim; (4) Plaintiff has failed to state a claim against Defendants for retaliation; and (5) Plaintiff's claims against Defendants in their official capacities are barred by Eleventh Amendment immunity. (ECF No. 15) Plaintiff has filed a brief in opposition. (ECF No. 18). The matter is now ripe for disposition.

## Discussion

Plaintiff brings his claims under 42 U.S.C. § 1983 for violations of his First and Fourteenth Amendment rights. To successfully state a claim against any of the defendants for a violation of his constitutional rights pursuant to 42 U.S.C. §1983, Plaintiff must allege that: (1) the conduct complained of was committed by a person acting under color of state law; and, (2)

4

the conduct complained of deprived Plaintiff of rights, privileges, or immunities secured by the laws or the Constitution of the United States. *See Rehberg v. Paulk*, 566 U.S. 356, 361 (2012). Plaintiff's claims will be addressed seriatim.

1. *Official Capacity Claims*

Defendants assert that, to the extent that Plaintiff is suing them in their official capacities for monetary damages, they are immune from suit under the Eleventh Amendment. The Court agrees.

It is well settled that suits for damages by individuals against state governments, state agencies, or state officers acting in their official capacities are barred by the Eleventh Amendment. *Sossamon v. Texas*, -- U.S. --, 131 S.Ct. 1651, 1657-58 (2011). No exceptions to Eleventh Amendment immunity are applicable here. The Commonwealth of Pennsylvania has not consented to be sued. Congress has not expressly abrogated Pennsylvania's Eleventh Amendment immunity from civil rights suits for damages. *Smith v. Luciana*, No. 97-3613, 1998 WL 151803, *4 (E.D.Pa. March 31, 1998), *aff'd*, 178 F.3d 1280 (3d Cir. 1999) (Table). Thus, Plaintiff's claims against Defendants in their official capacities will be dismissed.

2. *Personal Involvement*

It is well-settled that liability under § 1983 requires a defendant's "personal involvement" in the deprivation of a constitutional right. *See Gould v. Wetzel*, 2013 WL 5697866, at *2 (3d Cir. Oct. 21, 2013) (*citing Argueta v. U.S. Immigration and Customs Enforcement*, 643 F.3d 60, 73 (3d Cir. 2011)). This means that the defendant must have played an "affirmative part" in the complained-of misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) ("In a § 1983 suit . . . [a]bsent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."); *Oliver v. Beard,* 358 F. App'x 297, 300 (3d Cir. 2009);

*Chinchello v. Fenton,* 805 F.2d 126, 133 (3d Cir. 1986). Supervisory liability may attach if the supervisor personally "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced" in a subordinate's unconstitutional conduct. *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (*citing Baker v. Monroe Twp.*, 50 F.3d 1186, 1190-91 (3d Cir. 1995)).[3]

Here, Defendants assert that Plaintiff's claims against Defendants Cameron, Miller, and McKeown must be dismissed because he has failed to establish their personal involvement in the alleged constitutional violations. The Court disagrees with this assertion for the following reasons.

Defendants argue that the essence of Defendant Cameron's involvement was that of the role of Superintendent at SCI-Houtzdale. Plaintiff responds that Defendant Cameron approved the order for AC-confinement and emergency transfer of Plaintiff to SCI-Dallas, and that Defendant Cameron received direct information from Defendant Brumbaugh. At this early juncture of the litigation, the Court finds that these allegations are minimally sufficient to establish Defendant Cameron's personal involvement in Plaintiff's retaliation claim, the merits of which will be discussed later in this opinion.

Next, Defendants argue that Defendant McKeown was the hearing examiner at SCI-Dallas who found Plaintiff guilty of a misconduct and that a conclusion adverse to what Plaintiff would have preferred is not enough to demonstrate McKeown's "acquiescence" in an alleged constitutional violation that purported occurred at SCI-Houtzdale. Plaintiff responds that

---

[3] The Court notes that supervisory liability may also attach if the supervisor, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *A.M. ex rel. J.M.K,* 372 F.3d at 586 (quoting *Stoneking v. Bradford Area Sch. Dist*, 882 F.2d 720, 725 (3d Cir. 1989). However, there are no allegations regarding a relevant policy, practice or custom in this case.

6

McKeown made his disciplinary decision "right after [a] phone conversation with Miller," that Plaintiff informed McKeown that the misconduct was issued in retaliation for a pending lawsuit he had against SCI-Houtzdale staff, and that rather than take any action upon receiving this information, McKeown imposed a substantial disciplinary punishment. As with the allegations against Cameron, the Court finds that these allegations are minimally sufficient to establish Defendant McKeown's personal involvement in Plaintiff's retaliation claim, the merits of which will be discussed later in this opinion.

Defendants also argue that the allegations against Defendant Miller are insufficient to establish personal knowledge of any constitutional violation. Plaintiff responds that Defendant Miller investigated and approved his transfer to AC custody and the false misconduct report issued by Brumbaugh, Mooney, and John Doe. Plaintiff alleges that Miller approved the transfer and the misconduct in retaliation for Plaintiff's pending lawsuit against fellow SCI-Houtzdale employees. Again, the Court find these allegations to be minimally sufficient to establish Defendant Miller's personal involvement in Plaintiff's retaliation claim, the merits of which will be dismissed later in this opinion.

3. *The Issuance of a False Misconduct Report*

Defendants move to dismiss the claims against Brumbaugh and Mooney based upon their allegedly filing a false misconduct report. Defendants correctly state that the filing of a false misconduct report does not state a cognizable constitutional claim. However, the Court finds that Plaintiff's allegations are more than allegations of filing a false misconduct report; rather the Amended Complaint states that defendants' actions were retaliatory based on Plaintiff's filing of

7

a lawsuit against SCI-Houtzdale staff.[4] "[R]etaliation for the exercise of constitutionally protected rights . . . 'is itself a violation of rights secured by the Constitution actionable under section 1983'." *Miller v. Mitchell*, 598 F.3d 139, 147 (3d Cir. 2010) (quoting *White v. Napoleon*, 897 F.2d 103, 111-12 (3d Cir. 1990)).

4. *First Amendment Claims*

As stated *supra*, Plaintiff alleges that he was placed in AC custody and then transferred to SCI-Dallas in retaliation for exercising his constitutionally protected right to file a lawsuit[5] and that the hearing examiner acquiescenced in the retaliatory conduct by finding him guilty. To state a claim for retaliation, a prisoner must allege that: (i) he was engaged in constitutionally protected conduct, (ii) he suffered some adverse action at the hands of prison officials, and (iii) "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to take that action." *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (citation omitted).

The Court finds that the allegations of the Amended Complaint state plausible First Amendment retaliation claims to survive a motion to dismiss challenge.

---

[4] In their brief, Defendants argue that "Plaintiff contends the Defendants' actions were based on retaliation for Plaintiff filing a lawsuit several years ago against a former Superintendent and 'six health care employees.'" Br. at 7 (ECF No. 15). This is not entirely accurate. As noted in the Background section of this opinion, Plaintiff's prior lawsuit was against several prison officials, employees, and medical personnel working at SCI-Houtzdale. Further, the retaliatory conduct alleged in this lawsuit occurred while that lawsuit was pending.

[5] At this juncture, the Court must note that in his opposition brief, Plaintiff appears to be broadening his retaliation claim; specifically, that the adverse actions of Defendants "prevented [him] from consummating an appeal of civil action no. 3:13-cv-00246." Br. at 8. It is not clear to the Court whether Plaintiff is attempting to amend his Amended Complaint in a response brief, which is something he is not permitted to do under the Federal Rules. However, the Court notes that Plaintiff did in fact file an appeal in that case, and the Court of Appeals for the Third Circuit issued an Opinion on January 31, 2017, summarily affirming the decision of the District Court. *See* Stewart v. Pennsylvania Dept. of Corrections, et al., Nos. 16-1897 & 16-2339, slip op., filed Jan. 31, 2017.

5. *Fourteenth Amendment claims*

Plaintiff's Fourteenth Amendment claim against Defendant McKeown is based upon the same facts as alleged to support his retaliation claim against McKeown -i.e., that he acquiesced in the improper retaliatory conduct by finding him guilty of the misconduct. The Supreme Court of the United States has restricted the availability of Fourteenth Amendment due process claims to those instances that are not covered by legal tests and standards applicable to other constitutional amendments. *See County of Sacramento v. Lewis*, 523 U.S. 833 (1998). Thus, any attempted Fourteenth Amendment claim against McKeown based upon the same facts as alleged to support the retaliation claim is barred by the doctrine set forth *Albright v. Oliver,* 510 U.S. 266 (1994) (plurality) and *Graham v. Connor*, 490 U.S. 386 (1989).

"Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims'." *Albright*, 510 U.S. at 273 (quoting *Graham*, 490 U.S. at 395). *See also Kapp v. Wetzel*, 2017 WL 1927731, at *3 (W.D. Pa. May 10, 2017) (same). Therefore, Plaintiff's claims against Defendant McKeown are properly evaluated under the First Amendment, and not as a Fourteenth Amendment due process claim. Defendants' request to dismiss this claim will be granted.

**Conclusion**

For all the above reasons, the pending motion to dismiss will be granted in part and denied in part. Specifically, the motion will be granted as to Plaintiff's claims brought against the

individual defendants in their official capacities and Plaintiff's Fourteenth Amendment due process claim against Defendant McKeown. The motion will be denied in all other respects.

An appropriate Order follows.

s/ Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc:   LEE STEWART
      GM-3632
      SCI Dallas
      Drawer K, Follies Road
      Dallas, PA 18612
      (via U.S. First Class Mail)

      J. Eric Barchiesi
      Office of Attorney General
      (via ECF electronic notification)